**In the United States District Court
for the District of Kansas**

———————

Case No. 21-cv-2368-TC

———————

Lonnie R. G.,[1]

*Plaintiff*

v.

Kilolo Kijakazi,
Acting Commissioner of Social Security,

*Defendant*

———————

**MEMORANDUM AND ORDER**

Plaintiff Lonnie R. G. claims he cannot work due to several physical and mental disabilities. He seeks review of a decision of the Commissioner of Social Security denying him Supplemental Security Income under Title XVI of the Social Security Act, 42 U.S.C. §§ 416(i), 423. For the following reasons, the Commissioner's final decision is reversed and remanded for further proceedings.

**I**

**A**

**1.** Federal district courts have jurisdiction, upon timely request, to review the Commissioner's final administrative decisions. 42 U.S.C. §§ 1383(c)(3), 405(g). These cases require a careful review of the record to determine whether "substantial evidence supports the factual findings and whether the [administrative law judge] applied the correct legal standards." *Allman v. Colvin*, 813 F.3d 1326, 1330 (10th Cir.

---

[1] Plaintiff will be referred to only by first name followed by initials to protect his privacy. *See, e.g.*, *Joseph M. v. Kijakazi*, No. 22-1065, 2023 WL 2241526, at *5 (D. Kan. Feb. 27, 2023).

2016) (citing *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007)). Evidence in support of a finding is substantial if "a reasonable mind might accept [it] as adequate to support a conclusion," and therefore must be "more than a mere scintilla." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). The ALJ's findings must be grounded in substantial evidence and demonstrate that the ALJ "consider[ed] all relevant medical evidence in making those findings." *Grogan v. Barnhart*, 399 F.3d 1257, 1262 (10th Cir. 2005) (citing *Baker v. Bowen*, 886 F.2d 289, 291 (10th Cir. 1989)). Consequently, the court will "not reweigh the evidence or try the issues de novo," but it will "meticulously examine the record as a whole . . . to determine if the substantiality test has been met." *Id.* (citations omitted).

**2.** To evaluate an application for disability benefits, the Commissioner uses a five-step sequential analysis. 20 C.F.R. § 416.920(a)(4); *Wilson v. Astrue*, 602 F.3d 1136, 1139 (10th Cir. 2010). "If a determination can be made at any of the steps that a claimant is or is not disabled, evaluation under a subsequent step is not necessary." *Wilson*, 602 F.3d at 1139 (quoting *Lax*, 489 F.3d at 1084). The claimant bears the burden of proof for the first four steps, but the Commissioner does for the fifth. *Hackett v. Barnhart*, 395 F.3d 1168, 1171 (10th Cir. 2005). In the first three steps, the Commissioner determines whether the claimant has engaged in substantial gainful activity since the alleged onset of the disability, whether the claimant has any severe impairments, and whether the severity of any of those impairments meets or equals the severity of any impairment in the Listing of Impairments found in 20 C.F.R., Part. 404, Subpart P, Appendix 1. 20 C.F.R. §§ 416.920(a)(4)(i)–(iii); *Williams v. Bowen*, 844 F.2d 748, 750–51 (10th Cir. 1988).

The fourth and fifth steps of the analysis depend on the claimant's residual functional capacity (RFC), which the Commissioner assesses after completing the third analytical step. 20 C.F.R. § 416.920(e). A claimant's RFC is the most the claimant can do despite limitations. §§ 416.945(a)(1). The Commissioner determines the claimant's RFC based on all relevant evidence in the record. SSR 16-3p, 2017 WL 5180304, at *4–5 (Oct. 25, 2017).

After analyzing the claimant's RFC, the Commissioner proceeds to the fourth and fifth steps of the analysis. At step four, the Commissioner determines whether the claimant can perform his or her past relevant work in light of his or her RFC. 20 C.F.R.

§ 416.920(a)(4)(iv). If so, the claimant is not disabled. *Id.* At step five, the Commissioner bears the burden to show—in light of the claimant's RFC, age, education, and work experience—that work suitable for the claimant "exists in significant numbers in the national economy." §§ 416.920(a)(4)(v), 416.960(c)(2).

## B

Plaintiff applied for supplemental security income benefits in 2019. Doc. 13 at 2; Adm. Rec. at 26.[2] The ALJ reviewed Plaintiff's disability claim according to the five-step analysis detailed in 20 C.F.R. § 416.920. *Id.* at 28–36. The ALJ first found that Plaintiff had not engaged in "substantial gainful activity" since his application date of April 18, 2019. *Id.* at 28 (citing 20 C.F.R. § 416.971, *et seq.*).

At step two, the ALJ found Plaintiff's "substance abuse disorder; alcohol abuse disorder; substance induced attention deficit hyperactivity disorder []; personality disorder; degenerative disc disease; degenerative joint disease; mild chronic obstructive pulmonary disease; and hepatitis" significantly limited Plaintiff's ability to work and were therefore "severe impairments." Adm. Rec. at 28 (citing 20 C.F.R. § 416.920(c)). At the third step, the ALJ determined that none of Plaintiff's impairments or combinations of those impairments "meets or medically equals the severity of one of the listed impairments" in the Listing of Impairments. *Id.* at 29.

The ALJ proceeded to assess Plaintiff's RFC. Adm. Rec. at 30–35. The ALJ summarized Plaintiff's claimed symptoms and limitations in light of his medical history. *Id.* at 31–33. The ALJ considered the state agency medical and psychological consultants' findings "generally persuasive" and "well supported by a relatively detailed discussion of the objective evidence." *Id.* at 34. After weighing Plaintiff's claims against those expert findings and the rest of the record, the ALJ found Plaintiff could perform light work with some additional limitations:

> Specifically, [Plaintiff] can lift or carry 20 pounds occasionally and 10 pounds frequently. He can stand or

---

[2] All references to the parties' briefs are to the page numbers assigned by CM/ECF except for factual references to the Administrative Record (Adm. Rec.).

3

> walk for 6 hours in an 8-hour workday. He can sit for 6 hours in an 8-hour workday. He can push or pull in the limits for lifting and carrying. He can occasionally climb ramps, stairs, ladders, ropes and scaffolds. He can occasionally balance, stoop, kneel, crouch and crawl. He should avoid concentrated exposure to temperature extremes, humidity and pulmonary irritants such as fumes, odors, dust, gases and poor ventilation. He should not work in food service or where blood contamination might harm other [sic] due to Hepatitis. He can understand, remember and carry out simple work instructions and tasks at a SVP 2 level. He can have occasional contact with coworkers, supervisors and the public. He should not do teamwork types of job duties. He should not work with the public as a primary job duty.

*Id.* at 30. The ALJ based those findings on Plaintiff's alleged symptoms and the extent to which they were consistent with "the objective medical evidence and other evidence, based on the requirements of 20 CFR 416.929 and SSR 16-3p." *Id.*

At step four, the ALJ determined Plaintiff had previously worked as an automobile detailer, "a medium exertional level, unskilled occupation." Adm. Rec. at 35. Because that required a higher exertional level than Plaintiff was capable of, the ALJ determined Plaintiff was "unable to perform any past relevant work." *Id.*

At step five, the ALJ found that jobs existed in significant numbers in the national economy that Plaintiff could perform. Adm. Rec. at 36. Plaintiff would not have been considered disabled under the Medical-Vocational Guidelines if he could perform all work classified as light work. *Id.* But because the ALJ found Plaintiff had additional limitations, the ALJ asked a vocational expert what jobs existed in the national economy that a hypothetical individual with Plaintiff's age, education, work experience, and RFC could perform. *Id.* The vocational expert testified that such a person could work as a merchandise marker, which had 129,388 jobs in the national economy; routing clerk, which had 104,823 jobs; and addresser, which had 12,938 jobs. *Id.* Based on that testimony, the ALJ found other work in the national economy existed in significant numbers during the relevant period that Plaintiff was capable of performing. *Id.*

The ALJ therefore concluded Plaintiff had not been disabled since the date the application was filed, Adm. Rec. at 36, and denied Plaintiff's request for supplemental security income, *id.* at 27. The Appeals Counsel then denied Plaintiff's request for review, rendering the ALJ's decision the final decision of the Commissioner. *Id.* at 1–4; 20 C.F.R. § 416.1481. Plaintiff timely appealed to the District of Kansas for review. Doc. 1 at 1–2.

Plaintiff's appeal raises several objections, but the step-five discrepancy is the focus of this Order. Specifically, he argues that the decision failed to explain the discrepancy between Plaintiff's assessed RFC and the jobs identified in the fifth step. Doc. 13 at 23–24.

## II

Plaintiff's appeal is granted. The ALJ erred by failing to explain the apparent conflict between Plaintiff's ability to follow only simple instructions and the vocational expert's testimony—which the ALJ adopted—that found Plaintiff capable of jobs involving more complex tasks.

At the fifth analytical step, the ALJ determines whether there are suitable jobs for a claimant in the national economy. 20 C.F.R. § 416.920(a)(4)(v). If the ALJ relies on a vocational expert's testimony to help match the plaintiff's capabilities to specific jobs in the Dictionary of Occupational Titles (DOT), the ALJ must explain any discrepancies between that testimony and the job listings in the DOT. *Haddock v. Apfel*, 196 F.3d 1084, 1091 (10th Cir. 1999).

The DOT assigns each job title a General Educational Development level between one and six in three areas of educational development: reasoning, mathematics, and language. DOT App'x C, § III. A job with a GED reasoning level of two requires the employee to "[a]pply commonsense understanding to carry out detailed but uninvolved written or oral instructions [and] [d]eal with problems involving a few concrete variables in or from standardized situations." *Id.* A job with a GED reasoning level of three requires the employee to "[a]pply commonsense understanding to carry out instructions furnished in written, oral, or diagrammatic form [and] [d]eal with problems involving several concrete variables in or from standardized situations." *Id.*

The ALJ's assessment of Plaintiff's RFC conflicts with the vocational expert's testimony. The ALJ first found Plaintiff had the RFC to "carry out simple work instructions and tasks." Adm. Rec. at 30. Later, the vocational expert testified that Plaintiff was capable of performing jobs with GED reasoning levels of two and three, *id.* at 36, which require "carry[ing] out detailed . . . instructions" and "[d]ealing with problems involving several concrete variables," DOT App'x C, § III. A number of courts in this circuit have concluded, under similar circumstances, "that there appears to be an inconsistency between these two conclusions, requiring the ALJ to either resolve the conflict or explain why no such conflict exists." *C.K.D. v. Kijakazi*, No. 21-cv-2155, 2022 WL 4290472, at *4 (D. Colo. Sep. 16, 2022) (collecting cases). The ALJ nevertheless adopted the vocational expert's testimony without explaining the conflict between those conclusions. Adm. Rec. at 36.

The Commissioner claims the ALJ's decision was nonetheless correct. She first argues that the GED reasoning levels in the DOT refer to a claimant's level of education rather than level of mental ability, so the ALJ's assessment of Plaintiff's mental ability does not necessarily restrict Plaintiff to jobs under a certain GED reasoning level. Doc. 16 at 16–17 (citing, among others, *Anderson v. Colvin*, 514 F. App'x 756, 764 (10th Cir. 2013)). But that distinction does not negate the fact that the ALJ was obligated to explain the contradiction between Plaintiff's RFC and the jobs the vocational expert identified as suitable for Plaintiff.

In *Hackett v. Barnhart*, the ALJ found the plaintiff had an RFC to perform only "simple and routine work tasks," but denied her Social Security claim at step five of the analysis based on jobs that had a GED reasoning level of three. 395 F.3d 1168, 1176 (10th Cir. 2005). The Tenth Circuit reversed that determination because the RFC "limitation seem[ed] inconsistent with the demands of level-three reasoning." *Id.* Accordingly, if there is a seeming inconsistency between the reasoning level required for a job listed in the DOT and a claimant's RFC, the ALJ must explain that discrepancy. *See C.K.D.*, 2022 WL 4290472, at *4. The Commissioner appears to concede that *Hackett* requires an ALJ to explain any "apparent conflict between simple and routine work tasks and GED reasoning level three." Doc. 16 at 17. And in this case, the Mail Clerk job the ALJ identified requires a GED reasoning level of three. Doc. 13 at 23. So the decision must be reversed on that basis alone.

6

The Commissioner briefly argues that such an explanation is unnecessary for the remaining jobs—Marker and Routing Clerk—which have a GED reasoning level of 2. Doc. 13 at 23. But that argument is likewise deficient. Although the Tenth Circuit said that level-two reasoning might be consistent with "simple and routine work tasks," *Hackett*, 395 F.3d at 1176, that statement has since been construed "as non-binding dicta," *C.K.D.*, 2022 WL 4290472, at *5 (citing, among others, *Alissa M. v. Saul*, No. 19-2105, 2020 WL 1847745, at *11 (D. Kan. Apr. 13, 2020) ("The issue of whether a GED reasoning level of two conflicts with simple work was not before the Court in *Hackett*.")). *Hackett* merely required the ALJ to explain any discrepancy between a claimant's assessed RFC and the reasoning levels in the DOT generally. And in this case, the ALJ failed to explain the discrepancy between Plaintiff's limitation to simple tasks and the Marker and Routing Clerk jobs, which could require following detailed instructions.

The ALJ's decision is reversed. The other, numerous issues in Plaintiff's briefing are unaddressed because "they may be affected by the ALJ's treatment of this case on remand." *Watkins v. Barnhart*, 350 F.3d 1297, 1299 (10th Cir. 2003). But the ALJ should consider those other issues and correct them if necessary.

### III

For the foregoing reasons, the Commissioner's final decision is REVERSED and the case is REMANDED for further proceedings consistent with the reasoning above.

It is so ordered.

Date:  June 22, 2023               s/ Toby Crouse
                                   Toby Crouse
                                   United States District Judge